UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Raphael Cordero Campbell,

                  Petitioner,            Case No. 16-cv-13376

v.

                                        Judith E. Levy

Thomas Mackie,                   United States District Judge

                  Respondent.

_____/

**OPINION AND ORDER DENYING THE AMENDED PETITION
FOR WRIT OF HABEAS CORPUS [11], DENYING A
CERTIFICATE OF APPEALABILITY, AND DENYING
<u>LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL</u>**

Petitioner Raphael Cordero Campbell, a Michigan prisoner at the

Carson City Correctional Facility in Carson City, Michigan, seeks a writ

of habeas corpus under 28 U.S.C. § 2254. Petitioner challenges his Wayne

County, Michigan convictions for carjacking, Mich. Comp. Laws §

750.529a, armed robbery, Mich. Comp. Laws § 750.529, felon in

possession of a firearm, Mich. Comp. Laws § 750.224f, and possession of

a firearm during the commission of a felony ("felony firearm"), Mich.

Comp. Laws § 750.227b. He alleges in an amended petition that his trial

attorney was ineffective and that there was insufficient evidence at trial

to support his firearm convictions. The State argues in an answer to the amended petition that the state appellate court's decision was a reasonable application of Supreme Court precedent and that Petitioner procedurally defaulted his second claim.

Having reviewed the pleadings and the state-court record, the Court finds that Petitioner's claims do not warrant habeas relief. Accordingly, the amended petition will be denied.  The Court also denies a certificate of appealability and leave to proceed in forma pauperis on appeal.

## I. Background

### A. The Trial and Sentence

Petitioner waived his right to a jury trial and was tried before a circuit court judge in Wayne County Circuit Court. The Michigan Court of Appeals accurately summarized the evidence at trial as follows:

> On the evening of September 25, 2013, defendant approached the victim and her 11 year-old sister, who were on a motorbike and had stopped at a stop sign in Detroit. Defendant brandished a handgun at the victim and her sister, held the weapon approximately six inches from the victim's ear, and fired a shot into the air. He then demanded the victim's money and motorbike.

2

Afraid that defendant might kill her or her sister, the victim complied. As defendant drove away, the victim and her sister ran home, which was two blocks from the scene. After she attempted to call the police—her call did not go through—the victim told her mother and stepfather that she had been robbed. Although the victim did not personally know defendant, she recognized him because she had seen him in her neighborhood. The family then got into the step-father's van, and drove around the neighborhood looking for defendant and the stolen motorbike.

Meanwhile, a Detroit Police officer on patrol in the neighborhood stopped defendant for making a reckless turn. Defendant gave his state identification to the officer. During the traffic stop, the victim and her family approached the scene in their van. The victim recognized defendant, and told the officer that defendant had stolen her motorbike. As the officer requested backup, defendant dropped the motorbike and fled on foot.

Within 45 minutes, the police found defendant, now unarmed, hiding in an attic crawlspace of the residence listed on his identification. . . .

. . . . [T]he parties stipulated that defendant's prior felony conviction made it illegal for him to possess a firearm on the date of the carjacking. Nonetheless, defendant denied carjacking or robbing the victim. He testified that he was in a casual sexual relationship with the victim in September 2013, and that the victim only accused him of the charged crimes when she learned he had cheated on her. Defendant said he ran from the police because he was fearful the victim's

3

stepfather would attack him, despite the presence of a police officer.

*People v. Campbell*, No. 320557 (Mich. Ct. App. Aug. 20, 2015) (unpublished).

Following the proofs and oral arguments, the trial court found Petitioner guilty, as charged, of carjacking, armed robbery, felon in possession of a firearm, and felony firearm. The court held that the issue was one of credibility, that Petitioner's testimony was not credible, and that Petitioner's version of the facts was one of the most incredible stories he had heard in his thirty years of being a judge.

The court also determined that the circumstances supported the complainant's testimony. In reaching this conclusion, the trial court noted that the complainant had gone home and reported the incident to her family and later to the police officer who stopped Petitioner. The court stated that this was consistent with the motorbike being taken. The court did not think that the complainant knew Petitioner or had prior contact with him, as he indicated.

The court interpreted Petitioner's flight as consciousness of guilt because, if he had really believed that the complainant's stepfather was

about to attack him, he could have mentioned that to the officer who stopped him.[1] Although the police did not find a gun on Petitioner, the court pointed out that the officer who stopped Petitioner did not frisk him, and Petitioner could have discarded the gun after he ran away and before he was apprehended by other officers. (ECF No. 16-7 at PageID.299–305.)

At his sentencing on February 12, 2014, Petitioner claimed that the prosecutor had relied on perjured testimony and had not proved a single element of the crimes. Nevertheless, he accepted responsibility for his actions. (ECF No. 16-8 at PageID.313–319.) The trial court then sentenced Petitioner to two years in prison for the felony firearm conviction, followed by concurrent terms of twelve to twenty-five years for the carjacking and robbery convictions and three to five years for the felon-in-possession conviction. (*Id*. at PageID.319.)

---

[1] The Court questions the chain of logic leading from Petitioner's flight from the victim's stepfather—not from the police—to Petitioner's consciousness of guilt of carjacking. Nonetheless, the state court found Petitioner to lack credibility, and "[a] reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)).

### B.  The Motion for New Trial and Evidentiary Hearing

Petitioner moved for a new trial, claiming that his trial attorney had failed to (1) advise him of the prosecution's plea offers; and (2) subpoena phone records to show that the complainant knew him and had a prior relationship with him. (ECF No. 16-14 at PageID.489–490.) The trial court held an evidentiary hearing over the course of three days (September 9, 2014, September 11, 2014, and November 13, 2014). (ECF Nos. 16-9 – 16-11.) Petitioner, his court-appointed trial attorney, his mother, and his cousin testified at the hearing.

Petitioner's trial attorney testified at the hearing that, despite Petitioner's request for phone records, he did not obtain the records. His reason for not acquiring the records was that he thought the records were irrelevant because Petitioner hid from the police after the crimes. (ECF No. 16-9 at PageID.339–340.)

The attorney also admitted that he probably did not call the witnesses that Petitioner suggested to him. He did not recall looking at Petitioner's cell phone, which Petitioner's mother had offered to give him, because the phone was not charged. (*Id.* at PageID.342–344.)

6

Petitioner's mother, Cheryl Chamblis Campbell, testified at the hearing that she offered to give Petitioner's phone to his trial attorney because it showed text messages between Petitioner and the complainant a few days before the incident. Ms. Campbell stated that she made sure the phone was charged and that the attorney declined to accept the phone, although he did say that she could bring it back to him if he needed it. She took the phone home and put it in her safe, but she no longer had the phone because someone broke into her house and stole her safe. Ms. Campbell also testified that Petitioner had told her about his relationship with the complainant and that the complainant and Petitioner had a casual physical relationship. (*Id.* at PageID.355–358, PageID.362–363.)

Petitioner testified at the hearing that he knew the complainant before the incident, that they had a relationship for about four months, that she gave him money from time to time, and that they called or exchanged text messages frequently during the four months of their relationship. Petitioner stated that he had asked his attorney to obtain a private investigator and phone records to show that the complainant had

7

texted him and called him before the incident. According to him, the attorney did not obtain either an investigator or the phone records. (*Id.* at PageID.370–373.)

Further, Petitioner testified that, earlier on the day of the incident, he and the complainant rode the complainant's motorbike together, and she later allowed him to take her motorbike to the store. He claimed that he provided his trial attorney with the names and phone numbers of witnesses, but his attorney did not locate the witnesses. He explained that he fled after the police officer stopped him because the complainant's stepfather and another man had approached him, and he did not know what they were going to do. He admitted, however, that he did not inform the police officer who stopped him for the traffic violation that he was concerned about being attacked. He hid from the police under a pile of coats in an attic because he was on parole at the time and he was not supposed to have any contact with the police. (ECF No. 16-10 at PageID.384–388, PageID.395–400.)

Petitioner's cousin, Derrick Browder, testified at the hearing that the complainant was Petitioner's little "chick." He claimed to have seen

Petitioner with the complainant about 1:00 or 2:00 p.m. on the day of the incident and on at least one previous occasion with a group of people. (*Id.* at PageID.402–406.[2])

Following the evidentiary hearing, the trial court issued a written opinion denying Petitioner's motion for new trial. The court stated that Petitioner had failed to carry his burden of showing that trial counsel's performance fell below an objective standard of reasonableness and prejudiced him to the extent it deprived him of a fair trial. *See People v. Campbell*, No. 13-009175-01-FC (Wayne Cty. Cir. Ct. Dec. 4, 2014) (ECF No. 16-14 at PageID.496–500.)

### C. The Direct Appeal

Petitioner appealed his convictions to the Michigan Court of Appeals, claiming through counsel that the prosecution had presented insufficient evidence to sustain his convictions and that his trial attorney had failed to locate and call witnesses to rebut the testimony of prosecution witnesses. (ECF No. 16-14 at PageID.503–504, PageID.511–513.) In a *pro se* supplemental brief, Petitioner raised the same issues

---

[2]   The crimes occurred about 9:00 p.m. on September 25, 2013.

and also claimed that his appellate counsel was ineffective during the evidentiary hearing and that the trial court's *ex parte* communications and consideration of unsubmitted evidence of prior bad acts required a reversal. (*Id.* at PageID.519–541.)

The Michigan Court of Appeals found no merit in Petitioner's claims and affirmed his convictions. *See Campbell*, 2015 WL 4988632. Regarding Petitioner's claim about appellate counsel, the Court of Appeals stated that Petitioner had no right to counsel during post-conviction proceedings and, therefore, Petitioner could not claim that any assistance he received was ineffective. *Id.*, 2015 WL 4988632, at *2 n. 1.

In a *pro se* application for leave to appeal in the Michigan Supreme Court, Petitioner argued that his appellate attorney was ineffective, there was an *ex parte* communication, and his trial attorney was ineffective. (ECF No. 16-15 at PageID.576–586.) He maintains in his reply to the State's answer to his habeas petition that he also submitted his appellate briefs from the Michigan Court of Appeals to the Michigan Supreme Court. (*See* ECF No. 17 at PageID.698–699, PageID.711–712.)

The Michigan Supreme Court vacated the part of the Court of Appeals' opinion that stated Petitioner was not entitled to raise a claim of ineffective assistance of appellate counsel. The Michigan Supreme Court denied leave to appeal in all other respects. *See People v. Campbell*, 499 Mich. 896 (2016).

### D.  The Initial Habeas Petition, Motion for Relief from Judgment, Collateral Appeal, and Amended Petition

On September 15, 2016, Petitioner brought this case by filing a *pro se* habeas corpus petition under 28 U.S.C. § 2254 (ECF No. 1) and a motion to hold his habeas petition in abeyance while he pursued additional state remedies (ECF No. 2). His grounds for habeas relief were (1) he was denied effective assistance of appellate counsel, (2) he was denied effective assistance of trial counsel, (3) the trial court abused its discretion in denying his motion for new trial, and (4) there was insufficient evidence at trial to support his convictions for felon in possession of a firearm and felony firearm. (ECF No. 1 at PageID.5, 7–8, 10).

Petitioner did not prepay the filing fee or apply to proceed *in forma pauperis*, and he did not comply with the magistrate judge's order

11

directing him to cure the procedural deficiency. (ECF No. 3.) Accordingly, on November 29, 2016, the Honorable John Corbett O'Meara denied Petitioner's motion for a stay and dismissed Petitioner's case without prejudice for want of prosecution and for failure to comply with a court order. (ECF No. 5).

On January 12, 2017, Petitioner filed a motion for relief from judgment in the state trial court. He argued that the trial court had engaged in judicial factfinding to enhance his minimum sentence. The trial court denied Petitioner's motion because the court was not prohibited from departing from the sentencing guidelines and because Petitioner had not shown cause and prejudice for failing to raise his claim on appeal or in his prior post-conviction motion. *See People v. Campbell*, No. 13-009174-01-FC (Wayne Cty. Cir. Ct. Apr. 11, 2017). (ECF No. 16-13.)

Meanwhile, Petitioner paid the filing fee for his habeas petition, and on February 24, 2017, he filed a combined petition for writ of habeas corpus and a motion to re-open this case. (ECF No. 6.) Before Judge O'Meara could rule on the motion, Petitioner filed another motion to re-

open this case. In his motion, Petitioner asked for a stay while he continued to exhaust state remedies. (ECF No. 9.) On June 8, 2017, Judge O'Meara granted Petitioner's motions to re-open this case, but he held the petition in abeyance while Petitioner pursued state remedies. (ECF No. 10.)

In the meantime, Petitioner appealed the trial court's decision on his motion for relief from judgment. The Michigan Court of Appeals denied Petitioner's delayed application for leave to appeal because he had failed to establish that the trial court erred in denying his motion for relief from judgment. *See People v. Campbell*, No. 338503 (Mich. Ct. App. Sept. 15, 2017).

Petitioner did not appeal the Michigan Court of Appeals decision to the Michigan Supreme Court. (*See* ECF No. 16-17.) Instead, on October 4, 2017, Petitioner filed an amended petition for the writ of habeas corpus and a motion to lift the stay. (ECF No. 11.) The amended petition raises two claims: ineffective assistance of trial counsel and insufficient evidence supporting the two firearm convictions. Petitioner stated in his amended petition that he no longer wished to proceed with post-

13

conviction remedies in state court. He asked the Court to lift the stay and to proceed with his habeas petition. (*Id*. at PageID.75–76.)

On January 19, 2018, Judge O'Meara lifted the stay and directed the Clerk to serve the amended petition on the State. (ECF No. 13.) Following Judge O'Meara's retirement, the case was reassigned to this Court.

The State filed an answer to the amended petition. It argues, among other things, that Petitioner procedurally defaulted his second claim by not presenting that claim to the Michigan Supreme Court while he still had an available state remedy to exhaust. (ECF No. 15.) Petitioner maintains that his second claim is not procedurally defaulted, because he presented the claim to the Michigan Supreme Court on direct review. (*See* ECF No. 17.)

The record supports Petitioner's allegation that he presented his sufficiency-of-the-evidence claim to the Michigan Supreme Court. Although the claim does not appear in his form application for leave to appeal, there appears to be a missing page in the application. (*See* ECF No. 16-15 at PageID.580–81.) Furthermore, Petitioner stated in his

14

application that he wanted the Michigan Supreme Court to consider the issues that he raised in his Court of Appeals brief, and he attached the two briefs that he filed in the Michigan Court of Appeals to his application in the Michigan Supreme Court. (*See* ECF No. 16-15 at PageID.577, 589, 595–598, 610–614, 624–625, 632–634).

The State, moreover, addressed Petitioner's sufficiency-of-the-evidence claim in its answer to Petitioner's application for leave to appeal in the Michigan Supreme Court. (*See id*. at PageID.591, 652–654.) The State also conceded at the time that Petitioner was raising the same arguments that his appellate attorney had made in the Court of Appeals (*id*.), and Petitioner's appellate attorney challenged the sufficiency of the evidence in his brief before the Michigan Court of Appeals. (*Id*.)

Petitioner exhausted state remedies for his second claim and that claim is not procedurally defaulted because he raised the claim in both state appellate courts. The Court will proceed to address both of Petitioner's claims on the merits, as set forth below.

## II.  Legal Standard

The Antiterrorism and Effective Death Penalty Act ("AEDPA") limits the authority of a federal district court to grant habeas relief on a claim that was adjudicated on the merits by the state courts. *See* § 2254(d). A § 2254(d) petition may only be granted if the state court adjudication was "contrary to" or resulted in an "unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). A state-court decision is "contrary to" clearly established law "if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts." *Moore v. Mitchell*, 708 F.3d 760, 774 (6th Cir. 2013) (citing *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000)). And "an 'unreasonable application' of clearly established law occurs where 'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the [petitioner's] case.'" *Carter v. Bogan*, 900 F.3d 752, 767 (6th Cir. 2018) (alterations in original) (quoting *Williams*, 529 U.S. at 413).

16

An "unreasonable application" is more than incorrect; it must be "objectively unreasonable." *Id*. at 767-68 (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)). In other words, the federal habeas court must find that "the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Id*. (alteration in original) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). A § 2254 petition should be denied if it is within the "realm of possibility" that "fair-minded jurists" could find the state court decision was reasonable. *Woods v. Etherton*, 136 S. Ct. 1149, 1152 (2016) (*per curiam*).

## III. Analysis

### A. Trial Counsel

Petitioner alleges first that his trial attorney was ineffective. Petitioner contends that the attorney lacked a trial strategy and failed to obtain phone records or call available witnesses to rebut the prosecution's case.

As set forth above, the state trial court held an evidentiary hearing on the issue of trial counsel's representation and subsequently

17

determined in a written decision that trial counsel's performance was not deficient or so prejudicial as to deprive Petitioner of a fair trial. The Michigan Court of Appeals also addressed the issue of trial counsel's effectiveness and found no merit in Petitioner's claim.

### 1. Clearly Established Federal Law

To prevail on a claim about trial counsel, a habeas petitioner must show "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The deficient-performance prong "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. The petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Id*. at 688.

The "prejudice" prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. A habeas petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable

probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (internal and end citations omitted).

## 2. Application

### a.  Lack of a Trial Strategy

Petitioner alleges that his trial attorney had no trial strategy. Am. Pet. (ECF No. 11, PageID.85.) He points out that, when the attorney was asked at the evidentiary hearing what his trial strategy was, counsel's only reply was:

> He wanted a trial. I was his second attorney. Sometimes I'm not dealt a good hand and I don't think I was dealt a good hand in this matter.

(ECF No. 16-9 at PageID.342.)

"Constitutionally effective counsel must develop [a] trial strategy . . . based on what investigation reveals witnesses will actually testify to. . . ." *Ramonez v. Berghuis*, 490 F.3d 482, 489 (6th Cir. 2007). "The reasonableness of counsel's actions may be determined or substantially

19

influenced by the defendant's own statements or actions." *Strickland*, 466 U.S. at 691.

The record in this case demonstrates that trial counsel's strategy was to show that the prosecution had not proved its case beyond a reasonable doubt. He did this by cross examining the prosecution's witnesses and through the Petitioner's trial testimony. For example, Petitioner testified that he knew the complainant, that he did not steal her motorbike or money at gunpoint, and that he did not have a gun that day. (ECF No. 16-7 at PageID.289–291.)

Petitioner also testified that the victim's father had tried to grab him during the traffic stop and he did not know what the father was going to do. He also stated that he was on parole at the time and that the complainant's father had charged at him for no reason. (*Id.* at PageID.291–292, 295. Defense counsel used this testimony to explain why Petitioner fled. (*Id.* at PageID.297–298.) Defense counsel then argued that, according to Petitioner, the complainant was embellishing the charges because she was a scorned woman. (*Id.* at PageID.298.)

Defense counsel concluded his argument by stating that no robbery or carjacking occurred. He pointed out that the police found no money or gun on Petitioner, and the complainant had not called the police following the crime. (*Id.*)

Contrary to Petitioner's allegations, defense counsel did have a trial strategy. The strategy was reasonable, given the strength of the evidence against Petitioner and Petitioner's own testimony and actions. The fact that the strategy did not persuade the trial court to acquit Petitioner does not mean counsel was ineffective, and, "[a]s a reviewing court, [the Court's] role is not to speculate about . . . the plausibility of alternative litigation strategies." *Mickens v. Taylor*, 535 U.S. 162, 177 (2002) (Connor, J., concurring). Accordingly, Petitioner's claim about trial counsel's alleged lack of a trial strategy fails.

### b.  Failure to Produce Phone Records

Petitioner alleges next that his attorney was ineffective for failing to subpoena his phone records. Petitioner contends that the phone records would have shown that he knew the complainant and that he called her an hour before the alleged crimes. According to Petitioner, this

information would have tainted the complainant's credibility and opened the door to questioning her about whether she had consented to his use of the motorbike. (ECF No. 11 at PageID.85–86, 88.)

The trial court stated on review of this issue that the phone records did not show calls and text messages between the complainant and Petitioner. (ECF No. 16-14 at PageID.500.) The Michigan Court of Appeals likewise concluded that there was no evidence of phone records or text messages. *Campbell*, 2015 WL 4988632, at *1 n. 1. Although Petitioner alleges that these conclusions were unreasonable determinations of the facts, his post-conviction attorney stated at the evidentiary hearing that she tried three times to obtain Petitioner's phone records. Each time, she was informed that the company could not provide any records because the name and phone number did not match. (ECF No. 16-10 at PageID.415–416.)

At the next session of the evidentiary hearing, the prosecutor explained to the trial court that she had obtained phone records for the two phone numbers that Petitioner and his post-conviction attorney had given her. According to the prosecutor, the victim's cell phone number did

appear once in the records about an hour before the crime, but it was a thirty-seven second outgoing call from a phone number for someone named "Fresh Fresh." (ECF No. 16-11 at PageID.425–427, 444–445.)

The prosecutor went on to say that Petitioner's phone number was not a part of the records. (*Id.* at 426.) Although Petitioner contends that "Fresh Fresh" was another name for him, the phone numbers that he provided to the prosecutor during the course of the post-conviction proceedings were "248" area code numbers (*id.*), and Petitioner testified at the hearing that his phone number was 313-978-4398. (ECF No. 16-10 at PageID.380.)

In addition, the text messages were no longer available (ECF No. 16-11 at PageID.388), and Petitioner testified at trial that his cell phone was on Suzanne Street at the time of the incident. He did not say anything about calling the complainant an hour before the incident. Instead, he claimed that he had used the phone to call his baby's mother. (ECF No. 16-7 at PageID.291, 293–294.) Given the record in this case, the Michigan Court of Appeals did not unreasonably determine the facts when it stated that Petitioner had not provided any evidence that the

phone records or text messages existed. *Campbell*, 2015 WL 4988632, at *2 n. 1.

Further, even if counsel's performance were deemed deficient, there is not a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. The complainant testified at trial that, although she did see Petitioner one time before the day of the crime, she did not know him, and she never had a relationship with him. (ECF No. 16-7 at PageID.258, 260–261.) The trial court believed the complainant and stated that Petitioner's trial testimony was not credible. (*Id.* at PageID.303–304.)

During the later evidentiary hearing, the prosecutor reported that she had contacted the victim and that the victim had said she never spoke to Petitioner on the phone. (ECF No. 16-11 at PageID.426–427, 445.) Following the evidentiary hearing, the trial court stated that several factors had discredited Petitioner's trial testimony and that "[t]hese factors [were] not altered by the post conviction hearing." (ECF No. 16-14 at PageID.500.) In reaching this conclusion, the trial court stated:

24

> The victim denied knowing the defendant. After defendant was stopped, she immediately told the police that he had just robbed her. At the time he was stopped, the defendant ran without any protest or response to her accusation. When arrested, he tried to hide.

(*Id.*) The trial court's comments are strong indications that its verdict would not have been different if Petitioner had introduced the phone records for "Fresh Fresh" at trial.

Defense counsel, moreover, testified at the evidentiary hearing that the phone records were not relevant, because Petitioner fled after being stopped by the police and approached by the family. Defense counsel opined that any conversation Petitioner may have had with the complainant before the crime would not have mattered. (ECF No. 16-9 at PageID.339–340.)

Petitioner has failed to show that his trial attorney's performance fell below an objective standard of reasonableness and that counsel's failure to produce phone records prejudiced him. Therefore, the state courts' adjudications of Petitioner's claim about the phone records were objectively reasonable, and Petitioner is not entitled to relief on his claim.

### c. Failure to Call Available Witnesses

25

Petitioner's final claim about trial counsel is that counsel was ineffective for failing to call available witnesses to support his defense that the complainant agreed to let him use her motorbike. (ECF No. 11 at PageID.83–87.) The Michigan Court of Appeals stated on review of this claim that the claim was unavailing. According to the Court of Appeals, the trial court properly found that none of the witnesses were credible and none of them had demonstrated that Petitioner was innocent. *Campbell*, 2015 WL 4988632, at *4.

Petitioner testified at the evidentiary hearing that, before trial, he provided defense counsel with the names and phone numbers of witnesses, including Derrick Browder, Keith Johnson, and Dominique Betts. (ECF No. 16-9 at PageID.374–375.) He claimed that, although defense counsel had assured him that he would acquire a private investigator and locate witnesses and phone records, the attorney did not follow through. (ECF No. 16-10 at PageID.387–388.)

Petitioner's trial attorney testified at the hearing that, although he was sure he talked to Petitioner about potential witnesses, the names Dominique Betts, Keith Johnson, and Derrick Browder did not sound

26

familiar to him. (ECF No. 16-9 at PageID.20, 32.) The record, however, appears to confirm Petitioner's allegation that he wrote to his trial attorney before trial and informed the attorney of Dominique Betts, Keith Johnson, and Derrick Browder. (*See* ECF No. 11 at 32.)

Nevertheless, Petitioner's post-conviction attorney stated at the hearing that she was unsuccessful in her efforts to communicate with Dominique Betts, Keith Johnson, and someone named Gina. (ECF No. 16-10 at PageID.358–359.) Although the post-conviction attorney was successful in locating and producing Browder at the hearing, Browder apparently was not present when the alleged carjacking and robbery occurred. Instead, he testified that he saw Petitioner and the complainant together about 1:00 or 2:00 p.m. on the day of the incident when the complainant was allowing everyone, including Petitioner, to ride her motorbike. (*Id.* at PageID.348–349, 351.)

Furthermore, Browder was Petitioner's cousin, and he testified at the evidentiary hearing that, although he lived with Petitioner's mother for a little while, neither Petitioner, nor Petitioner's mother, told him that they needed him to testify at Petitioner's trial. (*Id.* at PageID.355–356.)

27

The trial court, therefore, reasonably determined from the facts that Browder's testimony about seeing Petitioner with the complainant was "suspect and inconclusive." (ECF No. 16-14 at PageID.500.) And the Michigan Court of Appeals reasonably determined that Petitioner's family members had a motive to lie about Petitioner's whereabouts to help him avoid a criminal conviction. *Campbell*, 2015 WL 4988632, at *4 n.2.

Petitioner himself testified at the evidentiary hearing that he did not think witnesses would have heard anything during the incident. (ECF No. 16-10 at PageID.384–385.) And, in the absence of any affidavits or other evidence demonstrating that Dominique Betts, Keith Johnson, and Gina had specific testimony favorable to the defense, Petitioner cannot show that he was prejudiced by the omission of their testimony. *Clark v. Waller*, 490 F.3d 551, 557 (6th Cir. 2007); *Tinsley v. Million*, 399 F.3d 796, 810 (6th Cir. 2005).

Even if the potential witnesses had testified that the complainant willingly allowed Petitioner to take her motorbike, the other evidence at trial, including the police officers' testimony and Petitioner's flight,

28

tended to discredit Petitioner's version of the facts and support the complainant's trial testimony. In the words of the Michigan Court of Appeals,

> Defendant's conduct during the traffic stop supports the judgment of the trial court that the witnesses vouching for his innocence were not credible. If, as defendant claims, the victim had actually given defendant permission to use her motorbike and simply fabricated the allegations because of her anger at his infidelity, it is reasonable to assume that defendant would not have fled and hidden from the police after the traffic stop. Instead, he would have explained the situation to the officer.

*Campbell*, 2015 WL 4988632, at *4 n.3.

There is not a reasonable probability that Petitioner's potential witnesses would have made a difference in his trial. Therefore, trial counsel was not ineffective for failing to contact or interview the witnesses.

### 3. Conclusion on the Ineffectiveness Claim

The state courts applied the correct standard to Petitioner's claims about trial counsel and their conclusions were not contrary to *Strickland*, unreasonable applications of *Strickland*, or unreasonable determinations of the facts. Given the double deference due to ineffective-assistance-of-

29

counsel claims, the Court concludes that Petitioner's ineffectiveness claim does not warrant habeas relief.

## B. Sufficiency of the Evidence

In his second and final claim, Petitioner alleges that there was insufficient evidence to support his convictions for felon in possession of a firearm and felony firearm. Petitioner contends that there was no evidence he possessed a firearm. He points out that no gun was found on him, no casings were located at the crime scene, no neighbors reported a shooting, and he did not flee when initially approached by a police officer. He also points out that the victim and her family apparently were not worried about him being armed, because they looked for him after the alleged crimes. Petitioner states that the only evidence of a gun was the complainant's testimony that he wielded a gun while threatening her, but her description of the gun was vague. (ECF No. 11 at PageID.93–94.)

The Michigan Court of Appeals adjudicated this claim on direct review and rejected it on the merits. The Court of Appeals stated that "there was ample evidence proffered at trial for a rational trier of fact to

find defendant guilty of . . . . felon-in-possession, and felony-firearm."

*Campbell*, 2015 WL 4988632, at *2.

## 1. Clearly Established Federal Law

The critical inquiry on review of a challenge to the sufficiency of the

evidence supporting a criminal conviction is,

> whether the record evidence could reasonably support a
> finding of guilt beyond a reasonable doubt. But this inquiry
> does not require a court to "ask itself whether *it* believes that
> the evidence at the trial established guilt beyond a reasonable
> doubt." Instead, the relevant question is whether, after
> viewing the evidence in the light most favorable to the
> prosecution, *any* rational trier of fact could have found the
> essential elements of the crime beyond a reasonable doubt.
> This familiar standard gives full play to the responsibility of
> the trier of fact fairly to resolve conflicts in the testimony, to
> weigh the evidence, and to draw reasonable inferences from
> basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (internal citations and

footnote omitted) (emphases in original). "Circumstantial evidence may

support a conviction, *McKenzie v. Smith,* 326 F.3d 721, 727 (6th Cir.

2003), and such evidence need not remove every reasonable hypothesis

except that of guilt. *Walker v. Russell,* 57 F.3d 472, 475 (6th Cir. 1995)."

*Apanovitch v. Houk*, 466 F.3d 460, 488 (6th Cir. 2006).

Under AEDPA, moreover, a habeas court's "review of a state-court conviction for sufficiency of the evidence is very limited," *Thomas v. Stephenson*, 898 F.3d 693, 698 (6th Cir. 2018), because *Jackson* claims are "subject to two layers of judicial deference," *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (*per curiam*). First, it is the responsibility of the jury to decide what conclusions should be drawn from the evidence admitted at trial. *Johnson*, 566 U.S. at 651 (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (*per curiam*)). "And second, on habeas review, 'a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Id.* (quoting *Smith*, 565 U.S. at 2); *see also Tanner v. Yukins*, 867 F.3d 661, 672 (6th Cir. 2017) (stating that "two layers of deference apply [to a sufficiency-of-the-evidence claim], one to the jury verdict, and one to the state appellate court"), *cert. denied*, 138 S. Ct. 1283 (2018).

### 2. Application

The *Jackson* standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n. 16. In Michigan, "[t]he elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *People v. Avant*, 235 Mich. App. 499, 505 (1999).

"Felon-in-possession is a statutory offense that is set forth by MCL 750.224f . . . ." *People v. Bass*, 317 Mich. App. 241, 267 (2016), *leave to appeal denied*, 501 Mich. 871 (2017). The two essential elements of the crime are: "(1) the defendant is a felon who possessed a firearm (2) before his right to do so was formally restored under MCL 28.424." *Id.* at 267-68 (citing Mich. Comp. Laws § 750.224f and *People v. Perkins,* 473 Mich. 626, 629 (2005)).

Petitioner stipulated at trial that he had a prior felony conviction and was not eligible to possess a firearm on the day of the alleged carjacking and armed robbery. (ECF No. 16-7, at PageID.286.) The victim, moreover, testified that Petitioner fired a thick, black handgun near her and her sister's faces and then demanded that she give him her

33

money and her motorbike. She handed her money to Petitioner and gave up the motorbike because she was afraid that she and her sister were going to be killed. (*Id.* at PageID.252–255.)

Both carjacking and armed robbery are felonies, *see* Mich. Comp. Laws § 750.529 (armed robbery) and § 750.529a(1) (carjacking), and "the testimony of a single witness is sufficient to support a conviction." *United States v. Osborne*, 886 F.3d 604, 613 (6th Cir. 2018) (quoting *United States v. Washington*, 702 F.3d 886, 891 (6th Cir. 2012)).

Therefore, a rational trier of fact could have concluded from the evidence taken in the light most favorable to the prosecution that Petitioner was guilty of both felony firearm and felon in possession of a firearm. Although Petitioner testified at trial that he did not possess a gun or steal money and the motorbike from the complainant at gunpoint (ECF No. 16-7 at PageID.290, 292), "[a] reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)).

Further, the state appellate court's conclusion – that the trial court accurately found Petitioner guilty of felony firearm and felon in possession of a firearm – was not contrary to *Jackson*. Petitioner is not entitled to relief, given the two layers of deference that apply to his claim.

## IV.   Certificate of Appealability and Pauper Status on Appeal

Federal Rule of Appellate Procedure 22(b)(1) provides that an appeal may not proceed unless a certificate of appealability is issued under 28 U.S.C. § 2253. Rule 11(a) of the Rules Governing Section 2254 Cases requires the Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). Section 2253(c)(2) is satisfied only if reasonable jurists could find either that the district court's assessment is debatable or wrong or that the issues presented deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000).

For the reasons set forth above, reasonable jurists could not find this Court's assessment of Petitioner's claims to be debatable or wrong.

Nor would reasonable jurists conclude that the issues presented are adequate to deserve encouragement to proceed further. *See Millender v. Adams*, 187 F. Supp.2d 852, 880 (E.D. Mich. 2002). Consequently, Petitioner is not entitled to a certificate of appealability.

Further, an appeal from this decision would be frivolous and could not be taken in good faith. *See Coppedge v. U.S.*, 369 U.S. 438, 444 (1962). Therefore, Petitioner may not proceed *in forma pauperis* on appeal. Fed. R. App. P. 24(a)(3)(A).

## IV. Conclusion

For the reasons set forth above, the state courts' adjudications of Petitioner's claims were not contrary to clearly established Supreme court precedent, unreasonable applications of Supreme Court precedent, or unreasonable applications of the facts.

Accordingly, the amended petition for a writ of habeas corpus (ECF No. 11) is **DENIED WITH PREJUDICE**, and a certificate of appealability is **DENIED**. The Court also denies leave to appeal *in forma pauperis*.

IT IS SO ORDERED.

36

Dated: August 10, 2020        s/Judith E. Levy
Ann Arbor, Michigan           JUDITH E. LEVY
                              United States District Judge

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 10, 2020.

s/William Barkholz
WILLIAM BARKHOLZ
Case Manager

37